IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**PATCHES FARMS, INC.**                                                                    **PLAINTIFF**

**v.**                                  **CAUSE NO.: 4:06-CV-163-SA**

**THOMPSON MACHINERY COMMERCE
CORPORATION**                                                        **DEFENDANT**

## JUDGMENT

The trial of the above-cited case was held on June 9, 2008, without a jury by the undersigned. Patches Farms, Inc. ("Patches") offered as witnesses Michael Pressley, Dr. Alan Blaine, Pell Parker, Paul Long, and John Stephens. Thompson Machinery Commerce Corporation ("Thompson") rebutted with the testimony of Paul Long, and the court took the case under advisement. The parties have submitted post-trial proposed findings of fact and conclusions of law.

The following constitutes the findings of fact and conclusions of law reached by this court pursuant to Federal Rule of Civil Procedure 52:

*Findings of Fact*

Beginning in 2004, John Stephens, president of Patches Farms, expressed an interest in purchasing a used Caterpillar combine to Michael Pressley, a Thompson Machinery salesman. Pressley knew of another farmer, Anderson, who was willing to sell his Lexion 485 combine in September of 2005. The 1999 Lexion combine was over five years old and had over 2200 operating hours on it. Prior to committing to buy the combine, Stephens had the opportunity and did personally inspect the combine, talked with its owner, and watched it operate in the fields. During the meeting between Anderson and Stephens, Stephens noticed that the F-30 bean header, to be sold with the combine, was in "bad shape." Based on his conversation with Anderson and his personal

inspection of the combine and headers, Stephens agreed to purchase the combine and two headers on behalf of Patches Farms and negotiated a purchase price with representatives from Thompson. Patches Farms was operating a John Deere combine at this time and used that combine as a trade-in toward the Lexion 485. Patches Farms contracted for the used Lexion 485, a used F-30 flex, or bean, header, and a used R-22 rice header for $113,000.

On September 15, 2005, Thompson delivered directly from Anderson's fields the used Lexion 485 combine and the R-22 rice header to Patches Farms. Pursuant to a prior agreement, Thompson took the F-30 flex header directly to the Thompson facility for repairs. Thompson installed new "fingers" on that header before realizing that it would cost more to repair the header, than replace the header. Patches Farms chose to replace the header with another used bean header from Eldridge, another equipment supply facility. The used Eldridge header required immediate repair work on the date it was delivered to Patches Farms.

Following delivery of the Lexion 485 combine and R-22 header, Patches Farms harvested their rice crop and began to experience some problems with the combine and the R-22 header. Specifically, during the 2005 and 2006 harvest season, Patches experienced the following problems with the used combine and used R-22 header: broken cutter bar, auger drive failure, problems with the air conditioning and the chain jumping off the sprocket, contour cylinder problems, mud hawg issues, brakes, calipers, and threshing drum problems, hydraulic leaks, and yield monitor and moisture monitor issues. Of these issues, only the broken cutter bar and auger drive failure completely prevented Patches Farms from harvesting their crop on the days these problems were issues. Some of these problems were mechanical problems, others were the result of operator-error.

Michael Pressley testified that Patches Farms' problems with the used Lexion 485 were

atypical for a combine; however, he later admitted that he had only sold and had experience with one used Caterpillar combine. Paul Long, an experienced farm equipment mechanic, testified that a properly maintained combine should last between 2000 and 3000 hours, and as long as the owner kept rebuilding it, could last eight to ten years. Long admitted that after five years, combines typically had a lot of problems because of the wear on all the moving parts. Long further testified that maintenance on combines and equipment over five years old typically costs between $5,000 and $15,000 a year. Moreover, he testified that customers with the same kind of combine were having the same number and type of problems Patches was having with the used Lexion 485. Accordingly, Paul Long testified that based on the age and hours of the used Lexion 485 and headers, the combine and headers performed as they should.

John Stephens noted that he usually kept combines for two to three years and admitted that the Lexion 485 had more hours on it than any used combine he had ever owned. When questioned about his experience with buying used combines, John Stephens testified as follows:

A. . . . You try to buy a machine, if you can, in that 9-1,100 [hour] range, you know.

Q. Why is that?

A. Well, they are not completely wore out.

Further, in Stephens' testimony regarding the used Eldridge header which was delivered with mechanical problems, Stephens noted that "that's the nature of getting used Cat equipment." In 2005, Patches Farms paid $5,197.11 for work performed on the Lexion 485 combine and headers; in 2006, Patches Farms paid $13,425.26 for repair work performed on those machines.

Within ten days of receipt of the Lexion 485 combine and headers, John Stephens, on behalf of Patches Farms, orally requested that Michael Pressley bring his John Deere combine back, refund

3

his down payment, and pick up the Lexion combine. Michael Pressley informed Stephens that the John Deere combine had already been sold; thus, it was not possible to comply with his request. There was no written communication sent by Patches Farms to Thompson regarding this request. In fact, the only written communication sent by Patches to Thompson was a September 1, 2006, letter disputing a charge.

After harvesting the last of his beans in 2006, Patches Farms filed suit against Thompson Machinery alleging a breach of the implied warranty of merchantability. Brian Ward, a soybean expert, came to John Stephens' land after the harvest of the beans to determine how much crop loss Patches Farm sustained due to the allegedly defective combine and headers.

*Conclusions of Law*

As noted in the Memorandum Opinion [53]dated April 22, 2008, Patches Farms' breach of the implied warranty of merchantability claim survived summary judgment. There are five elements which a plaintiff must prove to recover under Section 75-2-314: (1) that a "merchant" sold "goods," and he was a merchant with respect to "goods of the kind" involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury. Vince v. Broome, 443 So. 2d 23, 26 (Miss. 1983).

Pursuant to Mississippi Code Annotated Section 75-2-314, an implied warranty of merchantability accompanies the sale of goods by merchants. Merchantable goods are those that at least "pass without objection in the trade" and "are fit for the ordinary purposes for which such goods are used." Miss. Code Ann. § 75-2-314(2)(a) and (c). "The implied warranty of merchantability is not intended to guarantee that the goods be the best or of the highest quality-the standard is measured

4

by the generally acceptable quality under the description in the contract." Beck Ent., Inc. v. Hester, 512 So. 2d 672, 676 (Miss. 1987) (citations omitted). Where a product conforms to the quality of other similar products in the market, it will normally be merchantable.

Merchantability is also different for new and used goods of the same type. "Used goods are reasonably expected to require more maintenance and repair and their quality should not be measured on the same scale as that of new goods." Beck, 512 So. 2d at 676. Moreover, "[u]sed goods should be compared to similar used goods." Id. If they conform to the quality of other similar used goods, they will normally be merchantable. Plaintiff bears the burden to prove by a preponderance of the evidence that the good are not merchantable. Id. at 677.

The Court finds that Plaintiff did not prove that burden. Plaintiff offered no testimony and put on no proof of similar used goods and the difference in quality of Patches Farms' used Lexion 485 combine and others of similar age and hours. Indeed, John Stephens, on behalf of Patches Farms admitted that combines in general with over 1100 hours are worn out. He further admitted that headers wore out more quickly than combines and acknowledged that upon purchase, the F-30 flex header was in "bad shape." Patches Farms was able to inspect the combine and headers prior to purchase, speak with its previous owner, and witness the equipment working in the field.

To prove that the used Lexion 485 combine sold to Patches Farms by Thompson was not merchantable, Patches Farms was required to present evidence proving that said combine did not conform to like-aged and houred combines. For this reason, the Plaintiff failed to prove their case.

Even if Patches Farms had put on proof that the combine at issue was not merchantable, they also failed to meet their burden to prove injuries and damages proximately caused by the defective nature of the goods.

5

Plaintiff did not present any testimony or evidence of the cost of maintaining a used Lexion 485 combine. Based on the testimony of Paul Long, a combine of this age should cost between $5,000 and $15,000 a year in upkeep. Plaintiff's repair damages did not exceed this figure, therefore, based on the evidence in the record, the plaintiff did not incur any extraordinary repair damages as a proximate cause of the defective nature of the used Lexion 485.

After Patches Farms completely harvested all of its beans of the 2006 season, John Stephens filed this lawsuit, then retained Alan Blaine and his partner, Brian Ward, to calculate the amount of crop loss allegedly due to the defective combine. At trial, Dr. Alan Blaine explained the three types of crop loss: (1) pre-harvest crop loss due to the crop not being harvested quickly enough; (2) header loss from an improperly set header, or other combine-operator error; and (3) loss out of the back of the combine.

Dr. Blaine admitted that because the samples were not taken until after the beans were harvested, there was no way to determine to what the losses were attributable, i.e., whether the beans were lost due to preharvest shattering, header loss, or loss out of the back of the combine. Therefore, Plaintiff's explanation of the crop losses of 2006 is speculative and cannot be awarded by this Court.

Plaintiff also makes a claim for rice crop losses in 2005, but put on no evidence as to its valuation.

*Conclusion*

Accordingly, at the two day trial of this matter, Plaintiff failed to prove by a preponderance of the evidence that the used Lexion 485 combine Patches Farm purchased from Thompson was not merchantable. The testimony elicited at the trial overwhelmingly proved that used combines of this age would require maintenance of the same type Patches Farms to remain operable. Moreover, John

Stephens himself acknowledged that combines with over 1100 hours were worn out.

Patches Farms further failed to prove that any damages were sustained that were proximately caused by any defective nature of the used combine. Patches Farms' repair costs were along the average cost of maintenance to a used combine owner, and the expert they retained to prove crop loss admitted that his results were speculative in nature.

After careful consideration of all evidence presented in this case, the Court finds for the Defendant.

SO ORDERED, this the  15th  day of December, 2008.

                                       **/s/ Sharion Aycock**
                                       **U.S. DISTRICT JUDGE**